```
LAW OFFICES OF DAVID P. GARDNER
David P. Gardner, Esq. (SBN 123787)
755 Baywood Drive, 2nd Floor
Petaluma, CA 94954

Telephone:   (707) 658-4460
Facsimile:   (707) 658-4401

Attorney for Plaintiffs-Creditors
GARRETH SLEVIN and GINA OLIVEIRA
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>LAURA EDNA YAMASAKI,<br><br>        Debtor.<br>_____<br><br>GARRETH SLEVIN and GINA OLIVEIRA,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAURA EDNA YAMASAKI,<br><br>        Defendant.<br>_____ | Chapter 7 Case No. 10-11865<br><br><br><br><br><br>Adversary Proceeding No. 10-01110<br><br><br>**FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABLILITY OF A DEBT** |

       Creditors/Plaintiffs herein Garreth Slevin and Gina Oliveira ("Plaintiffs"), as their Complaint against Debtor/Defendant Laura Edna Yamasaki ("Yamasaki"), allege as follows:

**JURISDICTION AND PARTIES**

1. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 1334(b) and 11 U.SC. Section 523. This action is an adversary proceeding to determine the dischargeability of a certain debt and, as such, is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

2. Plaintiffs are natural persons residing in San Francisco County, California, and are Creditors in the underlying Chapter 7 case filed in the Northern District of California, Santa Rosa Division.

1

[First Amended Complaint to Determine Dischargeability of a Debt]

3. At all relevant times, defendant Yamasaki was a resident of Sonoma County, California, and is the debtor in Chapter 7 bankruptcy case number 10-11865 now pending in this court..

**GENERAL ALLEGATIONS**

4. In September 2007 Yamasaki purchased a house located at 801 Grosvenor Place in Oakland, California (the "House") for $875,000.

5. Yamasaki renovated the kitchen and did extensive remodeling on the House. During that work she discovered major water intrusion and other problems in the House.

6. In the downstairs Family Room/Play Room, Yamasaki discovered that there was a major intrusion problem. Water enters the downstairs floor from no known source, causing the wood on the floor and the walls to rot.

7. Yamasaki consulted three contractors regarding the downstairs water intrusion problem. However, instead of repairing the problem, Yamasaki had a large portion of the hardwood floor removed and replaced with plywood and spray foam. The spray foam acted as a dam to keep the water from seeping over the concrete into the adjacent open basement floor. Then Yamasaki put a carpet on the downstairs floor to conceal the work.

8. In addition to the work downstairs, Yamasaki had work performed on the Breakfast Nook at the House. A Work Proposal by Statewide Construction showed major renovations without permits in violation of code. Yamasaki confirmed in deposition that much of the work had been done: Yamasaki had removed a wall and changed the location of a sewer line, but there was no permit for this major work. The Statewide Construction work proposal also called for a beam to replace the wall and support the ceiling, but that work was never done. During this work Yamasaki discovered that, under the ceiling, the wood was rotted out and the second story floor needed to be replaced, but that work was never done either. Yamasaki just removed the wall and moved the sewer pipe, then covered everything up with drywall and paint.

9. In March 2008 Yamasaki sold the House to Plaintiffs for $1,187,000. Yamasaki realized this quick profit by actively and knowingly concealing from Plaintiffs the major problems which she discovered in the House.

2

10. Yamasaki's fraud was discovered after Plaintiffs moved into the house and stored some boxes in the downstairs Family Room/Play Room. A pipe running through a recessed light box leaked on the boxes. Plaintiffs advised the Yamasaki. Her contractor tore open the recessed light box and temporarily fixed the pipe. Plaintiffs moved their stored boxes to the other side of the downstairs Family Room/Play Room near an outside wall of the House. Then they found the boxes were wet, but this time from the ground up. When Plaintiffs pulled up the new carpet to investigate, they discovered the cover-up work that Yamasaki had performed.

11. Plaintiffs contacted a water intrusion specialist to look at the downstairs water intrusion problem, and by pure coincidence contacted one of the same specialists as Yamasaki, from whom they learned that Yamasaki had consulted him about the downstairs water intrusion problem <u>before</u> she sold the House to Plaintiffs.

12. In her written disclosure, Yamasaki never mentioned the downstairs water intrusion problem. She affirmatively represented that there were no problems, and in fact stated that there was a fairly good hardwood floor under a new carpet. This selling point was false and used to conceal the truth.

13. Plaintiffs also had a problem in the breakfast nook. The walls were efflorescing, and there was a leak causing the ceiling and wall to drip and fall apart. When Plaintiff Slevin removed part of the ceiling, he found that Yamasaki's poorly moved sewer pipe was the source of the leak. For half a year after selling the House to Plaintiffs, Yamasaki misrepresented that the leak in the breakfast nook was caused by rain.

14. In her written disclosure before selling the House to Plaintiffs, Yamasaki represented there were no repair estimates for the House and no alterations without a permit or in violation of code.

15. Yamasaki concealed the major problems she had discovered and caused in the House, in order to sell the House to Plaintiffs for a profit. Yamasaki concealed the problems in order to fraudulently induce Plaintiffs to buy the House.

3

[First Amended Complaint to Determine Dischargeability of a Debt]
Case: 10-01110    Doc# 4    Filed: 09/28/10    Entered: 09/28/10 10:18:30    Page 3 of 5

16. Plaintiffs did not want a fixer upper and would not have bought the House if they had known the condition it actually was in. Plaintiffs relied on the clean bill of health for the House as represented by Yamasaki.

17. After discovering Yamasaki's fraud the Plaintiffs pursued legal action against her. The day before the matter was set for arbitration, Yamasaki filed her petition for Chapter 7 Bankruptcy relief on May 17, 2010.

## FIRST CAUSE OF ACTION
## Determination of Dischargeability
## Obtaining Money by Fraud – 11 U.S.C. Sec. 523(a)(2)(A)

18. Plaintiffs reallege and incorporate by reference all of the allegations set forth above.

19. As stated above, Yamasaki made false representations, concealments and non-disclosures with knowledge of their falsity and with the intent to defraud and induce reliance by Plaintiffs, and Plaintiffs justifiably relied thereon to their resulting damage.

20. By virtue of her fraud, concealment, false representations and omissions, Yamasaki benefitted and obtained money from Plaintiffs, to their damage in an amount exceeding $250,000.

21. Yamasaki's conduct was fraudulent, oppressive, malicious, willful and deliberate, and comprised despicable conduct in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to receive exemplary damages.

**Wherefore,** Plaintiffs pray for entry of judgment against defendant Yamasaki as follows: Plaintiffs are entitled to damages as follows:

1. The difference between the amount Plaintiffs paid Yamasaki and the actual value of the property delivered to Plaintiffs along with loss of use and enjoyment of the property, according to proof, in an amount no less than $50,000;
2. For damages for emotional distress according to proof;
3. For exemplary damages as determined by the Court;
4. For prejudgment interest;

4

| | |
|---|---|
| 1 | 5. For costs of suit; |
| 2 | 6. For attorney's fees; |
| 3 | 7. For the Court's declaration that the judgment entered by it is non-dischargeable under |
| 4 | 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4); and, |
| 5 | 8. For such other and further relief as the Court deems just and proper. |

Dated: September 28, 2010         LAW OFFICES OF DAVID P. GARDNER

 /s/ David P. Gardner
David P. Gardner
Attorney for Plaintiffs/Creditors
Garreth Slevin and Gina Oliveria

5

[First Amended Complaint to Determine Dischargeability of a Debt]
Case: 10-01110   Doc# 4   Filed: 09/28/10   Entered: 09/28/10 10:18:30   Page 5 of 5